**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **ALICE M. WRIGHT,** | **)** | |
| | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | **CIVIL ACTION** |
| **v.** | **)** | |
| | **)** | **Case No. 08-2282-CM** |
| **THE TJX COMPANIES, INC.,** | **)** | |
| | **)** | |
| | **)** | |
| **Defendant.** | **)** | |
| ___________________________________ | **)** | |

**MEMORANDUM AND ORDER**

This case is before the court on two motions filed by plaintiff's former attorney, John B. Gage, for extensions of time to file objections to an order regarding a billing dispute, entered May 28, 2009 by Magistrate Judge O'Hara (Docs. 24 and 25). Mr. Gage represents that Judge O'Hara's order was served on May 29, 2009, but he has not supported this representation. Nevertheless, if the court accepts Mr. Gage's representation, any objections to the order were due by June 15, 2009. Mr. Gage filed his first motion for an extension of time on June 16, 2009, at 12:25 a.m., seeking five additional days to file his objection. Instead of filing an objection within five days of that request, Mr. Gage filed a second motion for extension of time on June 23, 2009 at 12:29 a.m.

Because both of Mr. Gage's requests for extensions of time were untimely, the court considers whether he has shown good cause and excusable neglect for failing to timely request additional time. Fed. R. Civ. P. 6(b)(1)(B); D. Kan. R. 6.1(a) ("Extensions will not be granted unless the motion is made before the expiration of the specified time, except upon a showing of excusable neglect."). When considering whether neglect is excusable, the court applies the following guidelines:

> [T]he determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the [nonmoving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 395 (1993) (construing excusable neglect under Bankruptcy Rule 9006(b), which was patterned after Rule 6(b)).

Viewed in a vacuum, Mr. Gage's excuses might appear to present good cause for granting him additional time to file objections to Judge O'Hara's order. But unfortunately, this is not the first time that this court has been faced with similar motions supported by strikingly similar explanations of unfortunate circumstances. The circumstances prompting Mr. Gage's requests sound like a familiar refrain to the court: Highly summarized, Mr. Gage states that he was in a car accident on "Saturday evening" (presumably Saturday, June 13, 2009, but Mr. Gage does not specify). He was therefore without a vehicle to go to a law library to conduct legal research. He also suffered a back injury from the car accident, and a lightning bolt froze up his computer shortly before his objections were due. Prior to filing his second motion for an extension of time, Mr. Gage ran out of critical prescription medication the weekend of June 20 and was incapacitated as a result. Also, his timeslips did not pull up on his computer, so he had to do significant work to justify the time he spent researching another case.

The court is sympathetic to Mr. Gage's situation. Indeed, Mr. Gage appears to be plagued by bad luck. In recent cases Mr. Gage has had pending before this court, he has suffered computer-related problems (*see Whitfield v. Clippinger*, 08-2085-CM, Doc. 33, at 2–3, Sept. 11, 2008[1]; Doc.

---

[1] "After having unexpectedly devoted most of the weekend to conducting such research and sending a lengthy email to his clients reporting the decision in their favor to them and assessing the (continued...)

41, at 2–3, Oct. 8, 2008[2]; *Tomson v. The Weitz Co.*, 07-2506-CM, Doc. 22, at 3, Feb. 5, 2008[3]); back pain (*see Mook v. Gertsema*, 07-2152-CM, Doc. 73, at 2, May 7, 2008[4]; *Tomson*, 07-2506-CM, Doc. 39, at 2, Apr. 14, 2008[5]); and car-related problems (*see Mook*, 07-2152-CM, Doc. 73, at 2, May 7,

---

[1] (...continued)
likelihood that the court in that case would award them a significant amount of attorney's fees and expenses in response to a motion seeking such sanctions, Plaintiff's counsel returned to researching his response to Defendants' Motion to Dismiss, only to have his computer crash, causing him to lose nearly six (6) hours' worth of research and after repeated unsuccessful attempts to recover it an subsequent difficulties with his system he had never before experienced, had to have his IT consultant inspect the computer onsite and decide that he would have to reload the entire operating system and all programs, which would require his taking the computer off-site for repairs."

[2] "It had simultaneously become clear to Plaintiff's counsel, however, that either such reshuffling of the directories on WordPerfect or other unknown factors were causing and continued to cause his computer to malfunction at an alarming rate, which failures were rendered far more difficult to work around by a change in the functioning of his Windows XP operating system which had occurred in August, when his computer had been attacked by a virus which had so thoroughly corrupted the system that his IT consultant had to take him [sic] the computer box off-site for the weekend, remove all programs and files to an external drive, and reformat the hard drive. Such reformatting, however, was not sufficient to correct problems with the computer's functioning, and after Plaintiff's counsel struggled for a week with the solution, his IT consultant had to remove the computer box for a second weekend, this time removing only essential data files and erasing the hard drive altogether, thereafter installing entirely new software and restoring data files to the system. Ever since the second, complete obliteration of his hard drive, for some unknown reason the Task Manager function in Windows XP has no longer been available to Plaintiff's counsel to terminate any program which has frozen up or ceased to function."

[3] "Finally, this document froze up on Plaintiff's counsel's WordPerfect ~~*three (3)*~~ *five (5) separate times* as he was trying to finish and file it–first after spell-check, next after adjusting the pagination, finally when he tried to save it, then twice more after he had to save it as "Caption," then tried to save it to PDF!!!!"

[4] "Plaintiff finds it necessary to seek an extension of the deadline in question because of the fact that her counsel aggravated a previous back injury he had sustained on Saturday in the process of changing a flat tire, eventually had to go to the doctor's office by Monday evening based upon the severe pain he was experiencing, and was put on muscle relaxers, very powerful pain medicine, and an anti-inflammatory medication, all of which make him incredibly tired."

[5] "Finally, last week undersigned injured his back, which incapacitated him for almost a full day and is still causing him intense pain, which has unfortunately placed limits on how long he can sit at the computer without suffering intense pain."

2008[6]; *Wright v. The TJX Companies*, 08-2282-CM, Doc. 18, at 1 n.1, May 28, 2009[7]), to name a few. Over the years, Mr. Gage has been the frequent victim of unfortunate events.

That said, the problem with Mr. Gage's reasons for failing to timely file objections is that the reasons did not develop until the weekend before his objections were due. Mr. Gage does not explain to the court why he could not have worked on the objections during the ten business days prior to that weekend or the additional five business days before the weekend of June 20. To put it bluntly, the situation that Mr. Gage finds himself in appears to be more the result of unjustified—or, at a minimum, unexplained—procrastination than the result of unfortunate circumstances. The court finds that Mr. Gage has not shown good cause for an extension of time.

Even if the court were to give Mr. Gage the benefit of the doubt and find that he has shown good cause, the court cannot conclude that his failure to file objections on time was the result of excusable neglect. In reaching this decision, the court considers the *Pioneer* factors identified above.

First, plaintiff—Mr. Gage's former client—is likely to be prejudiced by the court allowing Mr. Gage to delay resolution of the billing dispute. Plaintiff is awaiting distribution of settlement proceeds, and is unlikely to receive all or any of the amount that she is entitled to until the billing dispute is resolved. This consideration does not significantly impact the court's decision, but it does play a small role.

---

[6] "Plaintiff finds it necessary to seek an extension of the deadline in question because of the fact that her counsel aggravated a previous back injury he had sustained on Saturday in the process of changing a flat tire. . . ."

[7] "The undersigned's chambers received an e-mail from Mr. Gage later in the day . . ., apologizing for his delay and offering a pathetically detailed and rambling explanation for appearing late, including that he . . . ran out of gasoline on the way to the courthouse, and then refilled his tank with alleged defective gasoline causing his vehicle to die multiple times."

Second, while the length of the delay thus far is short, the court has doubts that this would be the last time that Mr. Gage would seek additional time to file papers. As Judge Vratil stated in *Leaman v. General Electric Co.*, No. 05-2565-KHV, Doc. 18, Mar. 15, 2006, "[Mr. Gage] has become notorious for 'extension-seeking campaigns' of the kind described in *Steinert v. Winn Group, Inc.*, – F.3d –, 2006 WL 598165 (10th Cir. 2006)." The expected delay would frustrate judicial proceedings in this case. Again, this factor is not significant, but the court has considered it.

The third and fourth considerations are the most critical to the court: the reasons for the delay and whether the movant acted in good faith. As noted above, while Mr. Gage's reasons facially appear to justify the delay, the court cannot say that they were out of Mr. Gage's control or that he should not be held responsible for his untimeliness. The reasons are familiar. More importantly, they only explain why he was unable to work on his objections the weekend prior to their deadline. They do not begin to explain Mr. Gage's lack of attention to the matter before that weekend. The court cannot find that the objections are late as a result of excusable neglect. Neglect, perhaps. But not excusable.

In light of all of these equitable considerations and in the interest of justice, the court denies the motions for extension of time. Mr. Gage failed to timely object to Judge O'Hara's order. The court will not review Judge O'Hara's order pursuant to Fed. R. Civ. P. 72.

By this order, the court puts Mr. Gage on notice that if he intends to file additional motions or responses in this closed case, he is expected to file them in a timely manner. The court is unlikely to grant extensions of time—particularly tardy ones, and even unopposed ones—that are not supported with a valid basis or cogent reasoning.

**IT IS THEREFORE ORDERED** that Motion for Extension of Time to File Written Objections to and Motion for Review of Order Entered May 28, 2009 by Magistrate Judge James P.

O'Hara on Questions of Expenses Charged Plaintiff by Movants (Doc. 24) is denied.

**IT IS FURTHER ORDERED** that plaintiff's second Motion for Extension of Time to File Written Objections to and Motion for Review of Order Entered May 28, 2009 by Magistrate Judge James P. O'Hara on Questions of Expenses Charged Plaintiff by Movants (Doc. 25) is denied.

Dated this 25th day of June 2009, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**